**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee,<br><br>       Plaintiffs,<br><br>    v.<br><br>INDUSTRIAL ROOFING COMPANY, INC., an Ohio corporation, and D.A.S. OF YOUNGSTOWN, L.L.C., an Ohio limited liability company,<br><br>       Defendants. | Case No. 07 C 6829<br><br>District Judge Andersen<br><br>Magistrate Judge Cox |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

Laura B. Bacon, ARDC No. 6288982
Central States Funds
Law Department
9377 W. Higgins Road
Rosemont, Illinois 60018
(847) 518-9800, ext. 3704

Attorney for Plaintiffs

## INTRODUCTION

Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Howard McDougall, trustee filed this action to collect withdrawal liability from Defendants Industrial Roofing Company, Inc., an Ohio corporation ("Industrial Roofing") and D.A.S. of Youngstown, L.L.C., an Ohio limited liability company ("DAS"), under the Employee Retirement Income Security Act of 1974 ("ERISA") *as amended* by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §1001 *et seq*. The material facts are undisputed. For the reasons set forth below, Plaintiffs are entitled to summary judgment as a matter of law.

## BACKGROUND INFORMATION

### I. Statutory Background

Congress enacted ERISA in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds had been accumulated in them. *Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 607, 113 S.Ct. 2264, 2271 (1993). Congress wanted to guarantee that if a worker had been promised a defined pension benefit upon retirement, he would actually receive it upon becoming vested. *Id*. To address the debilitating effect that employer withdrawals have on multiemployer plans, Congress passed the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461. *Central States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 486 (7th Cir. 2000).

MPPAA provides that when an employer withdraws from a multiemployer plan, it

must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217, 106 S.Ct. 1018, 1022 (1986); 29 U.S.C. §§1381. 1391.   MPPAA imposes withdrawal liability on an employer to ensure that "the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits."  *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992).   Employers become obligated to pay withdrawal liability only when they "withdraw" from the pension plan - that is, when they completely cease making contributions to the plan on behalf of their employees, or reduce their obligations in such a way as to trigger a "partial" withdrawal. 29 U.S.C. §§1383, 1385.

   To collect withdrawal liability, a plan must first determine the amount of withdrawal liability owed by a withdrawing employer.  29 U.S.C. §1382; *Central States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994).  The plan must then send the employer a notice and demand for payment.  29 U.S.C. §1399(b)(1); *Bell Transit*, 22 F.3d at 707.  The employer may ask the plan to review its assessment. 29 U.S.C. §1399(b)(2); *Bell Transit*, 22 F.3d at 707.   If dissatisfied with the review, the employer may initiate arbitration to challenge the withdrawal liability assessment.   29 U.S.C. 1401(a)(1); *Bell Transit*, 22 F.3d at 707.  If the employer fails to initiate arbitration, the assessment becomes due and owing and the plan may sue to collect it.   29 U.S.C.

§1401(b)(1); *Bell Transit*, 22 F.3d at 707.

Further, pursuant to 29 U.S.C. §1451(b), delinquent withdrawal liability payments, including any penalties assessed therefrom, are to be treated in the same manner as delinquent contributions under 29 U.S.C. §1145. *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992). Therefore, pursuant to 29 U.S.C. §1132(g)(2), plaintiffs are entitled to: delinquent withdrawal liability payments, interest on the delinquent withdrawal liability payments, an amount equal to the greater of the interest or liquidated damages as provided under the Plan in an amount not in excess of twenty percent (20%) of the delinquent withdrawal liability payments, reasonable attorneys' fees and costs, and such other relief the Court deems appropriate. An award of these amounts is mandatory. *Central States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (en banc).

Under 29 U.S.C. §1301(b)(1), all trades or businesses under common control are treated as a single employer for purposes of assessing and collecting withdrawal liability. *Central States, Se. & Sw. Areas Pension Fund v. Johnson*, 991 F.2d 387, 388-89 (7th Cir. 1993); *Central States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 889 (7th Cir. 1992). It follows then that all trades or businesses under common control are jointly and severally liable for the withdrawal liability incurred by one member of the controlled group. *Ditello*, 974 F.2d at 889.

## II. Factual Background

The Pension Fund is a non-profit, multiemployer pension plan. (Plaintiffs' L.R. 56.1(a)(3) Statement of Material Facts ("Pl. SMF"), ¶1). Plaintiff Howard McDougall is a

trustee of the Pension Fund and he and his fellow trustees are the plan sponsor. (Pl. SMF, ¶2). For a number of years, Industrial Roofing Company was subject to a collective bargaining agreement that required it to make contributions to the Pension Fund on behalf of certain employees. (Pl. SMF ¶11). But on October 29, 2006, Industrial Roofing ceased performing work under the collective bargaining agreement for which contributions to the Pension Fund were required and therefore its obligation to contribute to the Pension Fund ceased as well. (Pl. SMF ¶¶14-15). Consequently, Industrial Roofing ceased making contributions to the Pension Fund on behalf of its employees. (Pl. SMF ¶15).

The Pension Fund determined that Industrial Roofing and DAS and all trades or businesses under common control with them constituted a single employer within the meaning of 29 U.S.C. §1301(b)(1) and the regulations promulgated thereunder (the "Industrial Controlled Group"), and determined that the Industrial Controlled Group was the employer for purposes of the determination and assessment of withdrawal liability. (Pl. SMF ¶¶12-13). The Pension Fund determined that the Industrial Roofing Controlled Group effected a "complete withdrawal" from the Pension Fund, incurring withdrawal liability in the principal amount of $29,204.99. (Pl. SMF ¶¶15-16).

On or about August 20, 2007, Industrial Roofing received a notice and demand for payment of withdrawal liability sent from the Pension Fund (Pl. SMF ¶17). No member of the Industrial Controlled Group requested review or initiated arbitration with respect to the withdrawal liability assessment. (Pl. SMF ¶¶19-20). The Industrial Controlled Group has failed to pay its withdrawal liability assessment, and the withdrawal liability assessment is now due and owing to the Pension Fund. (Pl. SMF ¶21).

## ARGUMENT

Defendants claim that they are exempt from payment of withdrawal liability by virtue of being "construction industry employers". But Defendants waived the right to challenge the Pension Fund's withdrawal liability assessment by failing to initiate arbitration. Even if Defendants were able to challenge the withdrawal liability assessment on this ground, their argument would fail as Industrial Roofing was not a construction industry employer. Therefore, because they were under common control at the time of withdrawal, Defendants are jointly and severally liable for the withdrawal liability assessment that is due and owing, and Plaintiffs are entitled to judgment as a matter of law.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party, and a factual dispute is "material" only if it might affect the outcome of the suit under existing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. At 2510. The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). But once the movant has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999).

I.      **DEFENDANTS WAIVED THEIR RIGHT TO CHALLENGE WITHDRAWAL LIABILITY BY FAILING TO INITIATE ARBITRATION.**

MPPAA provides that "any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §1381-1399] shall be resolved through arbitration." 29 U.S.C. §1401(a)(1). In other words, "'*any* dispute over withdrawal liability as determined under the enumerated statutory provisions *shall* be arbitrated.'" *Robbins v. Admiral Merchants Motor Frieght, Inc.*, 846 F.2d 1054, 1056 (7th Cir. 1988) (quoting *I.A.M. Nat'l Pension Fund v. Clinton Engines Corp.*, 825 F.2d 415, 417 (D.C. Cir. 1987)) (emphasis in original). "By failing to arbitrate, an employer waives its defenses to withdrawal liability." *Chicago Truck Drivers, Helpers, and Warehouse Workers Union (Independent) Pension Fund v. Acme Motor Freight Service, Inc.*, 2007 WL 2815835 at *3 (Sept. 20, 2007, N.D. Ill.)(copy attached as Exhibit A)(citing *Robbins*, 846 F.2d at 1057).

Similarly, in this case, the construction industry provision cited by Defendants as their defense to withdrawal liability is found at 29 U.S.C. §1383(b). Because this is one of the statutory provisions enumerated in 29 U.S.C. §1401(a)(1), any dispute concerning a determination made under this section must be arbitrated. Industrial Roofing ceased contributing to the plan, and the Pension Fund determined that it permanently ceased to have an obligation to contribute to the Pension Fund. (Pl. SMF ¶14). The Pension Fund then determined the amount of its withdrawal liability and sent a notice and demand for payment of that amount. (Pl. SMF ¶17). No member of the Industrial Roofing Controlled Group requested review of the assessment, and no member of the Industrial Roofing

Controlled Group initiated arbitration with regard to the assessment.  (Pl. SMF ¶¶19-20).

In fact, the Defendants' first dispute regarding the withdrawal liability assessment was not

raised until their answer was filed on January 23, 2008, over five months after receiving the

Pension Fund's initial notice and demand.  By not timely initiating arbitration under 29

U.S.C. §1401(a)(1), the Defendants waived all challenges to the withdrawal liability

assessment, including the construction industry defense.  Therefore, the amounts

demanded by the Pension Fund are due and owing and the Pension Fund is entitled to

summary judgment as a matter of law.

## II.   DEFENDANTS DO NOT QUALIFY FOR THE "CONSTRUCTION INDUSTRY" EXEMPTION.

In their Affirmative Defense, Defendants claim that by virtue of being "construction

industry employers" under 29 U.S.C. §1383(b), they did not effect a withdrawal under the

provisions of ERISA.  As discussed above, the Defendants' right to challenge the

withdrawal liability assessment was waived when they neither initiated review with the

Pension Fund nor initiated arbitration pursuant to 29 U.S.C. §1401(a)(1).

But regardless of Defendants' waiver, Industrial Roofing does not qualify as a

"construction industry employer" under the terms of 29 U.S.C. §1383(b) and therefore its

withdrawal from the Pension Fund did result in a "complete withdrawal" under 29 U.S.C.

§1383(b).  29 U.S.C. §1383(b) provides:

> Notwithstanding subsection (a), in the case of an employer that
> has an obligation to contribute under a plan for work performed
> in the building and construction industry, a complete withdrawal
> occurs only as described in paragraph (2), if - (A) substantially
> all the employees with respect to whom the employer has an
> obligation to contribute under the plan perform work in the

> building and construction industry, and (B) the plan - (i) primarily covers employees in the building and construction industry, or (ii) is amended to provide that this subsection applies to employers described in this paragraph. (2) A withdrawal occurs under this paragraph if - (B) the employer - (i) continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (ii) resumes work within 5 years after the date on which the obligation to contribute under the plan ceases, and does not renew the obligation at the time of the resumption.

This provision acts to excuse employers in the building and construction industry from withdrawal liability in certain circumstances. *Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund*, 857 F.2d 1230, 1232 (8th Cir. 1988).

The meaning of "building and construction industry" is not defined within MPPAA or its corresponding regulations. But legislative history indicated that the term "building and construction industry" as it was used within MPPAA should have the same meaning as the term is used in the Taft Hartley Act. H.R. Rep. No. 869, 96th Congress, Sec. Sess., Part 1 at 67, 76, *reprinted* in 1980 U.S. Code Congressional and Administrative News 2918, 2935. In the context of section 8(f) of the Taft-Hartley Act, the National Labor Relations Board has defined the building and construction industry as that in which labor is provided "whereby materials and constituent parts may be combined on the building site to form, make or build a structure." *Carpet, Linoleum, and Soft Tile Local Union No. 1247*, 156 NLRB 951, 959 (1966).

The Eighth Circuit in *Union Asphalts*, adopted the definition articulated by the NLRB in *Carpet, Linoleum* in its analysis of whether the Defendant employer was exempt from withdrawal liability under the "building and construction industry" exception. The court held

while actual on-site work may not always be required for an employer to be considered within the building and construction industry, the work performed cannot be merely connected to that industry. *Union Asphalts*, 857 F.2d at 1234-5. For example employers who manufacture construction materials that are installed by others at the construction site are not in the building and construction industry. *Union Asphalts*, 857 F.2d at 1234. The transport of materials to and/or from a construction site, (i.e. sand, gravel, concrete) is not building and construction industry work. *Union Asphalts*, 857 F.2d at 1235, *Central States, Se. & Sw. Areas Pension Fund v. Waterland Trucking Service, Inc.*, 375 F.Supp.2d 684, 686 (N.D. Ill. 2005). *See also Central States, Se. & Sw. Areas Pension Fund v. Holloway Construction Co.*, 2000 WL 126893 at *3 (N.D. Ill., Feb. 1, 2000)(copy attached as Exhibit B); *Central States Se. & Sw. Areas Pension Fund v. Waterland Trucking Service, Inc. ("Waterland II")*, 2006 WL 4094350 at *3 (N.D. Ill. Dec. 22, 2006) (copy attached as Exhibit C)(noting that the pension fund's argument that transportation of materials to and from or within construction sites does not constitute work in the building and construction industry is supported by case law). Further, because the term "building and construction industry" is a part of a statutory exception in both section 8(f) of the Taft-Hartley Act and in Section 4203(b) of ERISA, it should be construed narrowly. *Union Asphalts*, 857 F.2d at 1234.

Based on the above case law, Industrial Roofing was not performing work in the building and construction industry. One hundred percent of Industrial Roofing's employees' time was spent "delivering material and equipment to job sites". (Pl. SMF, ¶¶25-26). The employees did not perform any on-site construction work and they did not operate any

construction equipment. (Pl. SMF ¶¶27-28). Therefore, although Industrial Roofing's business may have been connected to the building and construction industry, it was not within the "building and construction industry" as that term is used in MPPAA, 29 U.S.C. §1383(b).

Also, Defendants' affirmative defense asserts that Defendant DAS may also be a "construction industry employer." As stated in 29 U.S.C. §1383(b), this exception is determined based upon the work performed by the employees for whom the employer had an obligation to contribute to the Pension Fund. As demonstrated above, the work performed by those employees does not qualify for the exception. The nature of the business of any business other than the withdrawing employer has no bearing on the applicability of the exception for "construction industry employers". Therefore, the fact that Defendant DAS asserted that it too is a "construction industry employer" is irrelevant to its liability.

Even if the court found that Defendants did not waive their right to dispute the withdrawal liability assessment, the Defendants' only possible defense does not succeed. Industrial Roofing is not a construction industry employer and therefore Defendants incurred withdrawal liability, which is now due and owing to the Pension Fund.

## III.    DEFENDANTS ARE JOINTLY AND SEVERALLY LIABLE FOR THE WITHDRAWAL LIABILITY ASSESSMENT.

Withdrawal liability is an ERISA statutory obligation that is imposed upon "all trades or businesses" under "common control" with the company that withdrew from the fund. 29 U.S.C. §1301(b)(1); *See also Central States, Se. & Sw. Areas Pension Fund v. Neiman*,

285 F.3d 587, 589 (7th Cir. 2002).  Trades or businesses under common control are jointly and severally liable for the withdrawal liability incurred by the withdrawing employer. *Ditello*, 974 F.2d at 889, citing *Central States, Se. & Sw. Areas Pension Fund v. Koder*, 969 F.2d 451, 452 (7th Cir. 1992).  To determine whether entities are under common control for purposes of 29 U.S.C. §1301(b)(1), MPPAA authorizes the Pension Benefit Guaranty Corporation ("PBGC") to adopt certain regulations issued by the Secretary of the Treasury.  Under these regulations, two organizations belong to a "brother-sister" group if the same five or fewer people own a controlling interest (at least 80% of the stock) in each organization and exercise effective control (over 50% of the stock) over both.  26 C.F.R. §1.414(c)-2(c)(1); *See also Ditello*, 974 F.2d at 891.

Defendants Industrial Roofing and DAS were trades or businesses under common control on the date of Industrial Roofing's withdrawal from the Pension Fund.  Defendants have not disputed that they are trades or businesses.  As of October 29, 2006, Industrial Roofing's date of withdrawal from the Pension Fund, Douglas A. Slagle owned at least 80% of the stock of both Industrial Roofing and DAS.  (Pl. SMF ¶¶9-10).  Therefore, under 26 C.F.R. §1.414(c)-2(c)(1), Industrial Roofing and DAS belonged to a "brother-sister" group.  Because they were trades or businesses under common control on the date of withdrawal, Industrial Roofing and DAS are jointly and severally liable for the withdrawal liability assessment.

## CONCLUSION

Summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  After receiving proper notice from

the Pension Fund, no member of the Industrial Roofing Controlled Group requested review or initiated arbitration with regard to the withdrawal liability assessment.  Therefore, the Defendants waived any defenses they might have had to the withdrawal liability, including the building and construction industry exception, and the withdrawal liability assessment is due and owing.  But despite Defendants' waiver, Industrial Roofing was not an employer performing work in the "building and construction industry" and cannot be excused from withdrawal liability on that ground.  Finally, because Defendants Industrial Roofing and DAS were trades or businesses under common control at the time of Industrial Roofing's withdrawal from the Pension Fund, they are jointly and severally liable for the withdrawal liability assessment.  Because no genuine issue of fact remains, Plaintiffs are entitled to judgment as a matter of law.  Should summary judgment be granted in favor of the Pension Fund, the Pension Fund requests 21 days from the date of the Court's ruling to establish the amount of damages as interest and attorneys' fees and costs continue to accrue.

Respectfully submitted,

/s/ Laura B. Bacon
Laura B. Bacon
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 W. Higgins Road
Rosemont, Illinois 60018-4938
(847)518-9800, Ext. 3704
ARDC No. 6288982
lbacon@centralstatesfunds.org