# Exhibit B

Westlaw.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192
(Cite as: Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.))

C
Central States, Southeast and Southwest Areas Pension Fund v. Holloway Const. Co.
N.D.Ill.,2000.

United States District Court, N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Howard McDougall, Trustee, Plaintiffs,
v.
HOLLOWAY CONSTRUCTION CO., Holloway Sand & Gravel and HOL-ACC Corp., Defendants.
No. 98 C 5667.

Feb. 1, 2000.

## MEMORANDUM OPINION AND ORDER

KENNELLY, J.
*1 In 1980 Congress enacted the Multiemployer Pension Plan Amendments Act, which amended the Employee Retirement Income Security Act of 1974, to ensure that when an employer stopped making payments to a pension fund, the fund would not be stuck with vested pension obligations that were only partially funded. *See Robbins v. Lady Baltimore Foods, Inc.,* 868 F.2d 258, 261 (7th Cir.1989). To that end, the MPPAA imposes a penalty-called "withdrawal liability"-on any employer who withdraws from a fund; the Act provides that "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability."29 U.S.C. § 1381(a). The withdrawal liability is the employer's proportionate share of unfunded vested benefits, as determined by the plan sponsor under 29 U.S.C. § 1391(b), (c) or (d).*Id.*§ 1381(b).

To collect withdrawal liability, the plan must determine the amount owed by the employer and then send the employer a notice and demand for payment. *See*29 U.S.C. §§ 1382, 1399(b)(1). If the employer disagrees with the plan's assessment, it may ask the plan sponsor to review the liability determination.*Id.*§ 1399(b)(2)(A). The plan sponsor is then required to respond by notifying the employer of its final decision and giving the reason or reasons for that decision. *Id.*§ 1399(b)(2)(B). If the employer still disagrees with the plan's assessment, the employer's only recourse is to file a demand for arbitration. *Id.* § 1401. But even if the employer demands arbitration, it must still pay the withdrawal liability payments while the arbitration is pending; if the arbitrator ultimately rules that the employer either owes nothing or owes less than the plan demanded, the employer gets a refund. 29 U.S.C. § 1399(c)(2); *Central States, Southeast & Southwest Areas Pension Fund v. Wintz Properties, Inc.,* 155 F.3d 868, 871 (7th Cir.1998). If the employer refuses to make the interim payments, the plan may file a civil action in federal court to collect the interim payments. 29 U.S.C. § 1451(a)(1). This is what happened here.

Central States, Southeast and Southwest Areas Pension Fund (the Fund) is a multi-employer pension plan administered by its Trustees (including Howard McDougall) in Rosemont, Illinois. Holloway Construction Company, Holloway Sand & Gravel and Hol-Acc Corp., separate corporations that are considered to be a single employer within the meaning of ERISA, contributed to the Fund on behalf of certain of their employees under standard industry-wide collective bargaining agreements with various Teamsters local unions. In 1994, defendants stopped doing active construction projects and therefore stopped contributing to the Fund. In late 1997, the Fund sent defendants a notice and demand for payment of withdrawal liability in the amount of $1,241,597.34. The Fund attached a payment schedule that would have required defendants to pay $57,850.68 a month for 22 months, with a final payment of $20,876.45. Defendants believed that, as a "construction industry employer," they

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192
(Cite as: Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.))

were statutorily exempt from having to make the withdrawal liability payments under 29 U.S.C. § 1383(b) and told the Fund so. The Fund denied defendants' exemption claim, and defendants filed a demand for arbitration under 29 U.S.C. § 1401; that arbitration remains pending to this day. The Fund demanded that defendants pay the scheduled payments while the arbitration was pending, and when defendants refused, the Fund filed this lawsuit, seeking to compel defendants to satisfy their withdrawal liability obligations. The Fund has moved for summary judgment, arguing that under the law defendants are required to pony up the withdrawal liability payments and then seek a refund if the arbitrator ultimately concludes that they were entitled to the exemption. For the reasons explained below, the Court will grant the Fund's motion.

*2 Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.Fed.R.Civ.P. 56(c). The facts material to the resolution of this case are not disputed. The question for the Court is whether defendants have a statutory obligation to pay interim withdrawal liability payments, as demanded by the Fund, while its arbitration is pending. This is a legal question appropriate for resolution on summary judgment.

The MPPAA requires "the employer to pay 'notwithstanding' contentions that may prevail in the end."*Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 118 (7th Cir.1991). The system established by the MPPAA has been rightly characterized as "pay now, dispute later." *See Robbins v. Pepsi-Cola Metropolitan Bottling Co.*, 800 F.2d 641, 642 (7th Cir.1986); *Lady Baltimore*, 868 F.2d at 264. Defendants argue that an exception to the "pay now, dispute later" rule exists where the fund's claim is frivolous and where the employer is financially unable to make its interim payments. Certainly there are cases in this circuit that suggest that defendants are wrong and that the "pay now, dispute later" rule is unbending. For example, in *Wintz Properties*, the Seventh Circuit held that "[i]n enacting ERISA, Congress decided that interim payments were mandatory-no excuses-because the 'stakes' are safer in the interim if they are held by the Fund." 155 F.3d at 875. Similarly, in *Central Transport*, the court held that judges have no general equitable power to excuse interim payments. 935 F.2d at 119.

But at least a couple of cases suggest that the exception urged by defendants is viable. In *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682 (7th Cir.1987), the Seventh Circuit held that there are times when an employer who has filed a demand for arbitration challenging the plan's assessment need not pay the claimed withdrawal liability while the arbitration is pending:

[W]here the trustees bring an action to compel payment, pending arbitration, the court should consider the probability of the employer's success in defeating liability before the arbitrator and the impact of the demanded interim payments on the employer and the business.

Upon considering the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision, the court should have discretion, similar to that exercised in deciding whether to issue a preliminary injunction, to decline to use its injunctive power to compel payment. *Id.* at 685-86.

The *Central Transport* opinion, which seemed to hold that an employer can never escape interim payments, recognized that *McNicholas* created an exception to the "pay now, dispute later" scheme, but the court limited the exception substantially. The court held that "*McNicholas* is at most a recognition that if the fund's claim is frivolous-if the arbitrator is almost certain to rule for the employer-then the plan is engaged in a ploy that a court may defeat."935 F.2d at 119. The district court's job, according to *Central Transport*, is simply to "assure[

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**

Not Reported in F.Supp.2d                                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192
(Cite as: Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.))

] itself that the plan's claim is legitimate," and if the court can do that, it "should order the making of interim payments and leave the rest to the arbitrator."*Id.* *Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Rentar Industries, Inc.,* 951 F.2d 152 (7th Cir.1991), decided six months after *Central Transport,* reaffirms the notion that the second element set out in *McNicholas* is relevant only if the first element is satisfied. The court in *Rentar* held that in the interim payment analysis, "irreparable harm becomes important only if the employer makes an affirmative showing that the pension fund lacks a colorable claim."*Id.* at 155.Based on these cases, defendants can escape liability for the interim payments demanded by the Fund, if at all, only if the Fund's claim is frivolous; if the Fund's claim is colorable, defendants must pay.

The Fund demanded that defendants pay $1,241,597.34 to cover their proportionate share of unfunded vested benefits. Defendants dispute that they owe any withdrawal liability; they claim that, as a "building and construction industry" employer, they are exempt from withdrawal liability under 29 U.S.C. § 1383(b). They further argue that their entitlement to the exemption is so clear that the Fund's claim is entirely devoid of merit (i.e., frivolous). The Court disagrees. Under certain circumstances, the MPPAA excuses employers in the building and construction industry from withdrawal liability. *Union Asphalts & Roadoils, Inc. v. Mo-Kan Teamsters Pension Fund,* 857 F.2d 1230, 1232 (8th Cir.1988), *cert. denied,*490 U.S. 1022 (1989)."For example, an employer in the building and construction industry who goes out of business does not have to pay withdrawal liability to a multiemployer pension plan at that time."*Id.* But to qualify for the building and construction exemption, defendants have to establish that "substantially all" of the employees for whom it contributed to the Fund were building and construction industry employees. *See*29 U.S.C. § 1383(b); *Central States, Southeast & Southwest Areas Pension Fund v. Robinson Cartage Co.,* 55 F.3d 1318, 1321 (7th Cir.1995). In this circuit, "substantially all" means 85% or more. *Robinson Cartage,* 55 F.3d at 1321 (citing *Continental Can Co. v. Chicago Truck Drivers,* 916 F.2d 1154, 1160 (7th Cir.1990)). The evidence submitted falls short of establishing that the Fund's claim that defendants do not meet this criteria is frivolous.

In December 1997, defendants requested review of the Fund's withdrawal liability assessment, arguing that it was exempt from such liability because it was a building and construction industry employer. In response, the Fund asked defendants to provide information about their employees' job classifications-presumably to determine whether 85% of defendants' employees "perform work in the building and construction industry."In February 1998, the fund sent defendants a 17-page list of employees and asked them to fill in the blanks for the employees' job classifications; in March 1998, the Fund sent defendants a supplemental 6-page list again asking defendants to write in each employee's job classification. In total, the Fund asked for job classifications for 530 employees. Defendants provided the job classifications for 148 of the listed employees. Even assuming that each of those classifications indicated the performance of work in the building and construction industry, defendants showed the Fund only that 28% of its employees fell within this category-far short of the 85% threshold necessary to trigger the building and construction industry exemption set out in 29 U.S.C. § 1383. Because defendants' responses did not show that the exemption applied to alleviate defendants of their obligation to pay interim withdrawal liability payments, the Fund's demand for payment was certainly not frivolous based on the evidence submitted during the review process.

*3 Although defendants apparently did not provide this information to the Fund at the time of the review, in opposing the Fund's summary judgment motion, defendants submitted an affidavit from their assistant truck manager stating that"[a]ll of the Holloway Companies' covered employees per-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**

Case 1:07-cv-06829　　Document 20-3　　Filed 06/13/2008　　Page 5 of 6

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192
(Cite as: Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.))

formed work in the employers' construction business," and that "[e]ach covered employee performs services, whether as a driver, mechanic or other covered job classification that are necessary to the completion of the Holloway Companies' highway, road building and other construction projects."Affidavit of Roger Daoust, at ¶ 7. Specifically, Daoust states, defendants' claimed covered employees include truck drivers (he does not say how many) who transported sand, stone, gravel, asphalt and concrete from defendants' properties to job sites (where the material was unloaded by someone other than the driver) and then returned to defendants' property. *See* Daoust Affidavit, ¶ 10. Defendants counted these employees toward the 85% required to trigger the exemption. The Fund has argued-both here and in the arbitration-that this is inappropriate because drivers who deliver (and only deliver) materials to a construction site are not "performing work in the building and construction industry." And there is some support for the Fund's position.

Although the MPPAA does not define "building and construction industry," Congress indicated that the phrase should be given the same meaning for purposes of the MPPAA as it has for purposes of the Taft-Hartley Act, which is to say, the phrase is construed narrowly to limit the application of the exemption created under the statute. *See Union Asphalts,* 857 F.2d at 1234;29 U.S.C. § 158(f).*Union Asphalts* suggests that drivers who bring construction materials to a job site but do not remain there are not doing "work in the building and construction industry"; rather, they are doing "work connected to that industry." 857 F.2d at 1235. Defendants did not submit, and the Court could not find, a case holding the work described by Daoust necessarily falls within the building and construction industry exemption. Thus, the Fund had a reasonable basis in law to take the position it took with respect to defendants' drivers, and we cannot say that the arbitrator is almost certain to rule in defendants' favor. The Fund's claim is not frivolous, even considering the new evidence submitted in this Court.

Moreover, were the Court to reach the question of economic hardship, it would find that defendants failed to satisfy this element as well. Defendants submitted an affidavit from their accountant stating that the companies "are in a very precarious financial condition due to significant losses which they incurred performing various construction projects"; that the companies' "financial condition has also deteriorated by reason of the recent death of Daniel W. Holloway"; that the companies' properties "are subject to governmental liens securing substantial unpaid tax liabilities"; and that if the companies are forced to pay the interim payments "it is likely that they would be rendered insolvent."Affidavit of Orville H. Weir, Jr., ¶¶ 14-16. Mr. Weir's affidavit paints a rather bleak financial picture to be sure. But defendants provided no documentary evidence to back up Weir's conclusions, leaving the picture somewhat incomplete and potentially misleading. For example, defendants provided proof of the tax liens, but they provided no evidence to put those liens in perspective or to show that those liens make defendants' situation "precarious." Weir's self-serving conclusions are not enough, without factual support in the record, to defeat summary judgment. *See Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993); *Haywood v. North American Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

*4 None of this is to say that defendants do not have a colorable argument of their own for why they should not be required to pay what the Fund says they owe. But that is something for the arbitrator to decide. In the meantime, the statute requires defendants to make the interim payments. Summary judgment is entered in the Fund's favor, and the parties' motions for oral argument are denied as moot. The Fund is directed to submit proof of the claimed amount of the interim payments, plus any interest, liquidated damages and fees and costs the Funds seeks, on or before February 11, 2000. Defendants are directed to respond to the Fund's submission concerning the judgment amount on or before February 18, 2000. The case is set for status

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**

Not Reported in F.Supp.2d                                                                                                Page 5
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.))**

hearing and possible entry of a final judgment on February 25, 2000 at 9:30 a.m.

N.D.Ill.,2000.
Central States, Southeast and Southwest Areas Pension Fund v. Holloway Const. ??Co.
Not Reported in F.Supp.2d, 2000 WL 126893 (N.D.Ill.), 24 Employee Benefits Cas. 2192

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit B**