# Exhibit C

Westlaw.

Not Reported in F.Supp.2d                                                                                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673
(Cite as: Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.))

Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Service, Inc.
N.D.Ill.,2006.

United States District Court,N.D. Illinois, Eastern Division.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND and Howard McDougall, trustee, Plaintiffs,
v.
WATERLAND TRUCKING SERVICE, INC., Defendant.
No. CIVA 06 C 4455.

Dec. 22, 2006.

*MEMORANDUM OPINION AND ORDER*

CONLON, J.

*1 Central States, Southeast and Southwest Areas Pension Fund and its trustee, Howard McDougall (collectively, "the pension fund"), sued Waterland Trucking Service, Inc. for withdrawal liability pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.* The pension fund moves for summary judgment. For the reasons set forth below, the motion is granted.

BACKGROUND

The following facts are undisputed unless otherwise noted. The pension fund is a multiemployer pension plan under ERISA, administered by its trustee. Pls. Facts at ¶ 1. Waterland Trucking is a Michigan corporation in the heavy construction business, specializing in highway and road building projects. Def. Facts at ¶ 3. Waterland Trucking performs work for the State of Michigan and private contractors. *Id.* at ¶¶ 4-5. It produces sand and gravel for use in its construction projects and owns vehicles to haul these materials to its job sites. *Id.*

Waterland Trucking contributed to the pension fund pursuant to collective bargaining agreements with local Teamsters-affiliated unions. Def. Facts at ¶ 18; Pls. Facts at ¶ 6. Employees covered by the collective bargaining agreements performed at least one of the following services: (1) transporting construction materials from a gravel pit to a construction site; (2) transporting materials within a construction site; (3) transporting materials from a construction site for disposal; (4) transporting materials from a supplier or other Waterland Trucking site to a construction site; or (5) maintaining and repairing trucks and transportation equipment. Def. Facts at ¶ 14.

On December 25, 2004, the pension fund determined that as a result of a decline in Waterland Trucking's contributions, the company had effected a partial withdrawal under ERISA. Pls. Facts at ¶ 7. Due to its partial withdrawal, Waterland Trucking incurred withdrawal liability in the amount of $412,982.53. *Id.* at ¶ 8. Pursuant to the MPPAA, the pension fund sent Waterland Trucking a notice and demand for payment of withdrawal liability. *Id.* at ¶ 9. Waterland Trucking failed to make any withdrawal liability payments to the pension fund. *Id.* at ¶ 11.

On July 27, 2006, Waterland Trucking requested that the pension fund review the partial withdrawal liability assessment on the grounds that it is entitled to ERISA's "building and construction industry" exemption. Def. Facts at ¶ 1. Waterland Trucking contends that the pension fund never responded. *Id.* The pension fund disputes this statement, and attaches a copy of its response dated November 13, 2006. Pls. Resp. Def. Facts at ¶ 1; Pls. Reply Ex. A. Waterland Trucking initiated arbitration on November 15, 2006. Pls. Reply Ex. B.

DISCUSSION

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673
(Cite as: Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.))

I. Summary Judgment Standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A movant has the initial burden of demonstrating that it is entitled to summary judgment. *Cont'l Cas. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir.2005). Once a movant has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Cont'l Cas. Co.*, 427 F.3d at 1041. The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Id.* A genuine issue of material fact exists when the evidence is support to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

II. Withdrawal Liability

*2 Under ERISA and the MPPAA, an employer withdrawing from a multiemployer pension plan is liable for its share of unfunded vested benefits. 29 U.S.C. § 1381. When an employer withdraws, the plan must determine the amount owed by the employer, notify the employer of the amount of withdrawal liability and a schedule of payments, and demand payment. 29 U.S.C. §§ 1382, 1399(b)(1). The employer may request that the plan review its liability determination. 29 U.S.C. § 1399(b)(2)(A). The plan must respond to the employer's request and provide the basis for its decision. 29 U.S.C. § 1399(b)(2)(B). If the employer disputes the plan's determination, it may initiate arbitration. 29 U.S.C. § 1401. Even if an employer challenges the plan's determination, it must make withdrawal liability payments during arbitration. 29 U.S.C. §§ 1399(c)(2) and 1401(d); *see Central States, Southeast and Southwest Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 872 (7th Cir.1998) ( "ERISA unequivocally establishes a 'pay now, arbitrate later' scheme"). If the arbitrator decides in the employer's favor, the payments are refunded. *Id.* at 871.If the employer does not pay, the plan may file a civil action in federal court to collect the withdrawal liability. 29 U.S.C. § 1451(a)(1).

Judges have no general equitable power to excuse interim withdrawal liability payments. *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119 (7th Cir.1991). There is a narrow exception: interim liability payments may be excused if the employer shows that (1) the pension fund's claim is frivolous; and (2) the payments would cause irreparable harm. *Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1016 (7th Cir.2001); *Trustees of the Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Rentar Indus., Inc.*, 951 F.2d 152, 154 (7th Cir.1991); *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682, 686 (7th Cir.1987). A claim is frivolous if it has "no arguable basis in law or in fact."*Talley v. Lane*, 13 F.3d 1031, 1033 (7th Cir.1994) (citations omitted). Irreparable harm requires the threat of imminent insolvency. *Debrecini v. Merchants Terminal Corp.*, 889 F.2d 1 n. 6 (1st Cir.1989).

III. Building and Construction Exemption

Waterland Trucking argues it is not liable for withdrawal payments because it is entitled to ERISA's exemption for an employer if substantially all of its covered employees work in the building and construction industry. 29 U.S.C. §§ 1383(b) and 1388(d). Neither ERISA nor the MPPAA define "substantially all," but the Seventh Circuit has defined the term as 85% or more. *Central States, Southeast and Southwest Areas Pension Fund v. Robinson Cartage Company*, 55 F.3d 1318, 1321 (7th Cir.1995). The Seventh Circuit has also determined that the "substantially all" test should be applied to the eight-year time period used to de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**

Not Reported in F.Supp.2d  Page 3
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.))**

termine the fact of liability. *Id.* at 1323-24 n. 6.

*3 The statute does not define the term "building and construction industry." The legislative history suggests the term should "be given the same meaning as has developed in administration of the Taft-Hartley Act."H.R.Rep. No. 96-869(1), at 76 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 2918, 2944. The term has been construed narrowly because, as used in § 1383(b), it is part of a statutory exception. *Union Asphalts and Roadoils, Inc. v. MO-KAN Teamsters Pension Fund,* 857 F.2d 1230, 1234 (8th Cir.1988), *cert. denied,*490 U.S. 1022 (1989). In *Union Asphalts,* an employer appealed summary judgment in favor of the pension fund. The employer maintained it was entitled to the statutory exemption from withdrawal liability because it is in the building and construction industry. *Id.* at 1233.The court examined case law construing the Taft-Hartley Act. *Id.* at 1234.Noting that the National Labor Relations Board has generally defined "building and construction industry" as " 'subsum[ing] the provision of labor whereby materials and constituent parts may be combined on the building site to form, make[,] or build a structure," ' the court concluded that the employer was not entitled to the exemption. *Id.* at 1234-35 (quoting *Carpet, Linoleum, and Soft Tile Local Union No. 1247,* 156 N.L.R.B. 951, 959 (1966)). Its employees acted as suppliers, transporting materials from its refinery to a buyer's job site, unloading, and returning to the refinery. *Id.* at 1235.The employees did not engage in any construction at the job site. *Id.* In making its determination, the court gave weight to whether employees' duties included "work or significant involvement on the construction site." *Id.*

IV. Waterland Trucking's Evidentiary Submissions

Based on the undisputed facts, the pension fund is entitled to summary judgment. The pension fund determined that Waterland Trucking partially withdrew and sent notice and demand for payment of withdrawal liability. Pls. Facts at ¶¶ 7-9. Waterland Trucking failed to make any withdrawal liability payments. *Id.* at ¶ 11.The law requires that Waterland Trucking pay interim withdrawal payments while it disputes liability. 29 U.S.C. §§ 1399(c)(2) and 1401(d). The court may only excuse interim payments if Waterland Trucking demonstrates both that the pension fund's claim is frivolous and the payments would cause irreparable harm. *McNicholas Transportation,* 819 F.2d at 686. The pension fund has a colorable claim that Waterland Trucking is not entitled to the building and construction exemption. It is undisputed that Waterland Trucking's covered employees are drivers who perform transportation work and mechanics. Def. Facts at ¶¶ 11, 13, 14, 15. The pension fund's argument that transportation of materials to and from or within construction sites does not constitute work in the building and construction industry is supported by case law. *See Union Asphalts,* 857 F.2d at 1235.

*4 To defeat summary judgment, Waterland Trucking must set forth facts showing there is a genuine issue for trial that the pension fund's claim is frivolous. Waterland Trucking's president, Richard Massuch, attests that the company is engaged in the heavy construction business. Def. Resp. Ex. A. Attached to his affidavit are a list of "active contracts" and "pre-qualification letters" from the State of Michigan. *Id.* at Exs. A-1 and A-2. The pre-qualification letters provide a numeric rating for certain types of work, including "Aggregate Construction" and "Hauling, Trucking & Placing." *Id.* at Ex. A-2. The pre-qualification letters do not specify whether Waterland Trucking actually engaged in construction work or identify employees purportedly involved in construction work. The list of active contracts includes the contractor's name and location, but provides no description of the project. *Id.* at Ex. A-1. The materials submitted do not establish the listed contracts are in fact building and construction contracts. Moreover, the list does not identify the employees who worked on the contracts and describe their duties. The active contract list and pre-qualification letters do not raise an issue of material fact regarding Waterland Trucking's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**

Not Reported in F.Supp.2d                                                                                                    Page 4
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673
**(Cite as: Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.))**

entitlement to the building and construction exemption because they contain no information about the work of covered employees.

Waterland Trucking must provide some evidence that 85% or more of its covered employees worked in the building and construction industry during the applicable time period. 29 U.S.C. §§ 1383(b) and 1388(d); *Robinson Cartage Company,* 55 F.3d at 1321. The only submission specifically addressing covered employees is the affidavit of Doug Kendrick, the company's truck manager. Def. Resp. Ex. B at ¶ 1. Kendrick attests that each covered employee performed transportation of construction materials, either to and from a Waterland Trucking construction site, or on a construction site. *Id.* at ¶ 7. If anything, Kendrick's statement tends to support the pension fund's argument because mere transportation work, without significant involvement on the construction site, does not constitute work in the building and construction industry. *Union Asphalts,* 857 F.2d at 1235.

It is undisputed that Waterland Trucking conducts construction work on its own job sites, unlike the employer-supplier in *Union Asphalts. Union Asphalts,* 857 F.2d at 1235. The question remains whether Waterland Trucking's covered employees work in construction. Attached to Kendrick's affidavit are schedules purporting to show on-site construction work performed by each driver. Def. Resp. Ex. B at ¶¶ 11-15. As a preliminary matter, even though Waterland Trucking acknowledges that the applicable time period for evaluating entitlement to the exemption is 1997 through 2004, the schedules cover only 2000 through 2004. *Id.* at Ex. B-1-B-5; Def. Resp. at 2 n. 1; *Robinson Cartage,* 55 F.3d at 1323-24 n. 6. The schedules include the date, driver's name, and hours worked. Some entries contain a description such as "21AA," "sand & dirt" or "concrete;" others are blank. *Id.* The only description supporting Waterland Trucking's argument is an occasional entry "dirt on site" or "move materials on site." *Id.* Viewed in Waterland Trucking's favor, these phrases suggest that some covered employees transported dirt or other materials on a construction site. But it is impossible to determine from the abbreviated description whether the work represented "significant involvement" on the construction site. *Union Asphalts,* 857 F.2d at 1235. Even if the work were determined to be in the building and construction industry, the schedules do not cover the entire time period, nor do they establish the number of covered employees who worked in building and construction. Waterland Trucking need not prove that it is entitled to the exemption to defeat summary judgment. However, it must set forth facts sufficient to support a reasonable inference that the pension fund's claim is frivolous. On the basis of Kendrick's affidavit and the driver schedules, a reasonable fact finder could not conclude the pension fund's claim lacks support in law or in fact.

*5 It is not necessary to reach Waterland Trucking's contention that making interim liability payments would cause irreparable harm. *Rentar Indus.,* 951 F.2d at 155. The court notes, however, the evidentiary submission regarding irreparable harm is also insufficient. Massuch attests that Waterland Trucking suffered operating losses in 2006 and, if it were required to make interim withdrawal liability payments, "it is likely" the company would not be able to finance its construction work nor obtain the necessary pre-qualification from the State of Michigan. Def. Resp. Ex. A at ¶¶ 11-12. Waterland Trucking submits its internal financial statements. As the pension fund correctly points out, the statements are unaudited and Massuch fails to attest to their validity. Pls. Reply at 10. The statements, entitled "ledger," show itemized expenses and income for January through August 2006. *Id.* at Ex. A-3. The statements do not show Waterland Trucking's current financial state, nor do they show that the company would be unable to finance future work. Massuch's conclusory affidavit and the limited ledger of expenses and income do not support a reasonable inference that payment would pose an imminent threat of insolvency.*Debrecini,* 889 F.2d at 1 n. 6.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**

Case 1:07-cv-06829   Document 20-4   Filed 06/13/2008   Page 6 of 6

Not Reported in F.Supp.2d                                                                                           Page 5
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673
(Cite as: Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.))

CONCLUSION

For the reasons set forth above, the pension fund's motion for summary judgment is granted on the issue of liability. The pension fund is entitled to recover past due interim withdrawal payments, interest, costs, attorney's fees and liquidated damages. 29 U.S.C. § 1132(g)(2).

N.D.Ill.,2006.
Central States, Southeast and Southwest Areas Pension Fund v. Waterland Trucking Service, Inc.
Not Reported in F.Supp.2d, 2006 WL 4094350 (N.D.Ill.), 39 Employee Benefits Cas. 2673

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit C**